IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


CANDIE DORREEN SMITH    )
              )
v.             )  No. 3:20-0520
              )
KILOLO KIJAKAZI[1]      )
Commissioner of Social Security   )


**To:  The Honorable Aleta A. Trauger, District Judge**


## <u>REPORT AND RECOMMENDATION</u>

   Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 21), to which Defendant has filed a response. (Docket No. 22.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 23.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 6.)

---

   [1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 21) be **DENIED**.

## I. INTRODUCTION

Plaintiff has filed multiple applications for benefits. Plaintiff first filed applications for DIB and SSI on October 7, 2015. (AR 67-68.) She alleged that she was unable to work, as of the alleged disability onset date of April 30, 2015, because of migraines, anxiety, depression, and bipolar disorder. (AR 93.) The applications were denied. (AR 81-82, 96-97.) Plaintiff then filed additional applications for DIB and SSI, the former on January 26, 2017 and the latter on January 31, 2017. (AR 111-12.) She alleged that she was unable to work as of the revised alleged disability onset date of January 1, 2016, because of migraines, anxiety, depression, and bipolar disorder. (AR 113.) These applications were also denied. (AR 111-12.)

On October 6, 2017, Plaintiff filed another round of applications for DIB and SSI. (AR 135-36.) She alleged that, as of the amended alleged onset date of March 1, 2013, she was unable to work due to posttraumatic stress disorder ("PTSD"), bipolar disorder, anxiety, depression, insomnia, and carpal tunnel syndrome ("CTS"). (AR 135-37.) These applications were denied initially and upon reconsideration. (AR 156-57.) Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Robert Martin on February 6, 2019. (AR 29.) The ALJ denied the claim on May 8, 2019. (AR 9-11.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 20, 2020 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently filed the instant action, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since March 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bipolar disorder, post-traumatic stress disorder (PTSD), and alcohol use disorder, in remission (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine, and repetitive tasks and simple work related decisions. She can interact occasionally with supervisors and co-workers, but cannot interact with the general public. She can adapt to occasional changes in the workplace. She can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 27, 1974 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 15-21.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

#### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence

4

could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.* Second, the claimant is not disabled if she does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if she suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on her residual functional capacity ("RFC"), she can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not

5

presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed her to perform a full range of work with express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 15-21.)

### C. Plaintiff's Assertions of Error

Plaintiff presents two assertions of error: (1) that the RFC determination is not supported by substantial evidence because the ALJ failed to procure a medical opinion pertaining to Plaintiff's mental functioning; and (2) that the ALJ failed to properly evaluate Plaintiff's subjective complaints. (Docket No. 21-1 at 10.) Plaintiff therefore requests that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 19.)

Sentence four of 42 U.S.C. § 405(g) states the following:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting

6

*Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error as follows.

### 1. The RFC Determination.

Plaintiff's initial assertion of error is twofold. First, she claims that the ALJ's determination lacks the support of substantial evidence because the ALJ necessarily failed to base his RFC formulation on a medical opinion containing a "functional analysis" given that no such opinion exists in the record. (Docket No. 21-1 at 11.) Second, Plaintiff accuses the ALJ of both mischaracterizing and disregarding relevant evidence in the record to diminish the severity of her alleged impairments. (*Id.* at 12-15.)

Plaintiff notes initially that ALJs are "not qualified to interpret raw medical data," *Dillman v. Comm'r of Soc. Sec.*, 990 F. Supp. 2d 787, 795 (S.D. Ohio 2013), and cites decisions from other district courts in this circuit expressing the general premise that an RFC assignment must include reference to and analysis of medical opinion evidence. *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) ("[T]he ALJ must generally obtain a medical expert opinion when formulating the RFC unless the medical evidence shows relatively little physical impairment such that the ALJ can permissibly render a commonsense judgment about functional capacity.") (internal citations and quotations omitted); *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations … to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing."). While such cases are certainly instructive and reinforce the important precedential safeguard intended to suppress any temptation by the ALJ to "play doctor and make [his] own independent medical findings," *Simpson v. Comm'r*

7

of *Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996)), the policy is not quite as stringent as Plaintiff suggests. Indeed, the same district court that produced *Deskin* has since criticized the opinion as overly broad and an improper characterization of the law. *See Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) ("*Deskin* ... is not representative of the law established by the legislature[] and interpreted by the Sixth Circuit Court of Appeals.").

Moreover, the Sixth Circuit has recently reaffirmed that an RFC formulation "does not need to correspond to a particular physician's opinion," as there is no rule requiring that medical opinions serve as the "building blocks" of any assigned functional limitations. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). The ALJ is instead obligated only to "make a connection between the evidence relied on and the conclusion reached." *Id.* Plaintiff's suggestion that the instant ALJ committed reversible error by failing to base the RFC on a medical opinion therefore fails as a matter of law.[2]

Plaintiff's related argument that the ALJ violated his "duty to develop the record" by procuring a medical opinion (Docket No. 21-1 at 12) rings hollow given Plaintiff's failure to attend multiple scheduled consultative examinations. (AR 57, 75-76, 107.) The record shows that after Plaintiff missed her initial consultative examination in June 2016, the Commissioner attempted to contact Plaintiff via telephone calls, letters, and communications to a third party. (AR 75-76.) Following Plaintiff's failure to attend a second consultative examination scheduled in April 2017, the Commissioner again made calls and sent letters to both Plaintiff and a third party, all of which went unanswered. (AR 107.) The Commissioner additionally requested medical opinions from two

---

[2] While not necessarily dispositive of the issue, the Court also notes that the ALJ's RFC formulation is more favorable to Plaintiff than any of the opinions provided by State agency psychological consultants, which concluded that Plaintiff does not suffer from any severe mental impairment. (AR 19-20.)

8

of Plaintiff's treating providers (AR 395, 463), which apparently yielded no response.[3] Plaintiff attempts to skirt such evidence and shift blame to the Commissioner by asserting that she "cannot be held responsible for failing to complete an examination when she was not informed" (Docket No. 23 at 3), a position that would improperly subvert the well-established principle that a claimant bears the burden of producing evidence that demonstrates her entitlement to disability benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir. 1971))[4]. Defendant correctly notes that Plaintiff produced no opinions from her providers suggesting the existence of any functional limitations caused by her mental impairments, which further undermines her arguments regarding the completeness of the administrative record and the ALJ's RFC formulation. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 712 (6th Cir. 2013) ("While [the claimant] challenges the weight the ALJ gave to the psychological consultants' assessments, she does not offer statements from her treating sources to rebut those assessments[.]"). *See also Keitz v. Astrue*, No. 09-169, 2010 WL 2791570, at *3 (E.D. Ky. July 14, 2010) ("No treating physician limited [the claimant's] physical activity and she did not show that her … mental impairments caused more restrictive limitations than the ALJ found.").

---

[3] Plaintiff accuses Defendant of "fabricat[ing] efforts to develop the record" by arguing that these requests sought only medical *records* and not medical *opinions*. (Docket No. 23 at 3.) This assertion is refuted by a review of the forms sent to Plaintiff's providers, which specifically request – in addition to medical records – "a statement in your report or on a separate sheet about what the patient can still do despite his/her impairment(s)." (AR 395, 463.) This language tracks the regulatory definition of a "medical opinion." *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

[4] The Court also rejects Plaintiff's suggestion that the ALJ is somehow at fault for failing to keep tabs on Plaintiff's whereabouts. Plaintiff's regrettable habit of failing to present for scheduled appointments is documented extensively in the administrative record (AR 472-75, 478-80, 486, 513, 515-16, 518-521), and it is not unreasonable to expect a claimant applying to an agency for benefits to keep that agency apprised of any changes in the claimant's contact information.

9

The Court similarly finds no merit in Plaintiff's contention that the ALJ mischaracterized the evidence of record with respect to Plaintiff's ability to independently function. Plaintiff describes the ALJ's notation that she is able to "prepare meals, clean, wash clothes, wash dishes, shop for groceries, and manage her finances" (AR 16) as a distortion of the evidence regarding her capacity for understanding, remembering, or applying information. (Docket No. 21-1 at 12-13.) Yet this notation is at least partially borrowed from Plaintiff's own function report, in which she describes her ability to prepare meals, shop for groceries, and manage her finances without assistance. (AR 282-84.) Plaintiff did allege that it takes her "all day" to clean, do laundry, and wash dishes (AR 282), but the ALJ appropriately highlighted countervailing evidence that demonstrated a "fair ability to complete her activities of daily living," as well as relatively minor examination findings such as "fair" concentration, insight, and judgment, "normal" memory, "linear, logical and goal directed" thought processes, and a "fund of knowledge [] consistent with [her] education level as evidenced by language and vocabulary skills." (AR 16, 403, 411, 428, 504, 510.) Such discussion cannot reasonably be described as a mischaracterization of the administrative record.

Plaintiff also takes issue with the ALJ's statement that "[Plaintiff] was able to work hard to keep herself ok even without her medications" (AR 18), claiming that the statement is "wholly false." (Docket No. 21-1 at 13.) The record shows otherwise, as Plaintiff specifically reported to her mental health provider in September 2017 that "she has been out of Cymbalta for about a month and while the withdrawal was not great[,] she has continued to work hard to keep herself ok." (AR 478.) Plaintiff also clamors over the ALJ's notation that Plaintiff "was discharged from case management services on August 29, *2019* …" (AR 19) (emphasis added), arguing that because the ALJ's decision was issued on May 8, 2019 (AR 22), there was "no way for the ALJ

10

to have known what was to occur on August 29, 2019." (Docket No. 21-1 at 13.) It is difficult to imagine a more disingenuous attempt to undermine the ALJ's opinion given that Plaintiff was in fact discharged from case management – albeit on August 29, *2018* – after a case manager was unable to locate Plaintiff following a series of missed appointments. (AR 521) (emphasis added). Aside from what is obviously a scrivener's error with respect to the year of Plaintiff's discharge, the ALJ accurately describes what transpired on the date in question, including the case manager's inability to reach Plaintiff in person or by phone. (AR 19, 521.) The Court thus has little difficulty concluding that this alleged error is harmless.

Finally, Plaintiff faults the ALJ for failing to discuss "the majority of Plaintiff's positive findings," including agitated psychomotor behavior, abnormal speech, and an abnormal mood and effect. (Docket No. 21-1 at 15). The Court first notes that an ALJ "is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (internal citation omitted). The Court sees no indication that the ALJ disregarded relevant evidence given his discussion of Plaintiff's experience with racing thoughts, suicidal ideations, and his finding that Plaintiff's mental impairments clearly impacted "her ability to focus and concentrate." (AR 16.) The ALJ also referenced Plaintiff's treatment for depression, her reported mood shifts, and records demonstrating her continued difficulties with sleep, concentration, and completing tasks. (AR 18.) The ALJ further acknowledged evidence in the record that Plaintiff's condition caused "significant limitations" before noting the intermittent nature of such limitations. (AR 19.) These discussions suggest that the ALJ evenly considered the evidence of record, which precludes a finding of reversible error. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("[W]e consider the

ALJ's decision determinative if there is such relevant evidence as a reasonable mind might accept as sufficient to support the ALJ's conclusion.")

It is undoubtedly true that the biggest obstacle to Plaintiff's claim for disability benefits is the absence of any medical opinion suggesting the existence of functional limitations caused by Plaintiff's mental impairments. This is an especially unfortunate circumstance given the significant trauma Plaintiff has endured, as well as the consistent diagnosis of multiple mental conditions by providers in the administrative record. The Court recognizes that opinion evidence is generally imperative to any evaluation of a disability claim, *Word v. Comm'r of Soc. Sec.*, No. 1:18-CV-00187-SKL, 2019 WL 2396556, at *10 (E.D. Tenn. June 6, 2019), and an ALJ's decision to assign mental limitations without the benefit of a medical opinion – as the ALJ in this case did – may generally signify the commission of a reversible error. This Court has in fact previously questioned the propriety of such action. *See Johnson v. Saul*, No. 1:18-cv-0041, 2019 WL 3647058, at *5 (M.D. Tenn. July 19, 2019), *report and recommendation adopted,* 2019 WL 3574250 (M.D. Tenn. Aug. 6, 2019) (emphasizing the "complex nature of mental illness").

Nevertheless, the "burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (internal citation omitted). As discussed above, the ALJ's purported failure to "discharge his duty and develop the record" (Docket No. 21-1 at 10) is actually the product of Plaintiff's failure to attend multiple consultative examinations that were scheduled to develop the record by obtaining opinion evidence that would shed light on the functional limitations caused by her mental condition. This alone supports a finding that Plaintiff is not disabled. *Jones o/b/o C.C.J. v. Colvin*, No. 2:16-CV-02024-TMP, 2018 WL 2158776, at *5 (W.D. Tenn. May 10, 2018) (collecting cases

holding that a claimant's failure to cooperate in a consultative examination without explanation may be sufficient to deny a disability claim).

Further attempts to develop the record by requesting opinions from Plaintiff's treating providers regarding any functional impact caused by her mental impairments yielded no results. (AR 395, 463.) This is therefore not a case where an ALJ improperly declines to seek relevant information, *cf. Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 693, 702 (S.D. Ohio 2013) (finding reversible error where the ALJ failed to "solicit[] the opinion of a medical expert or order[] an additional consultative exam"), nor one involving an ALJ's decision to discount medical evidence and "substitute the ALJ's own interpretation of medical records for that of a physician …," *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). The Court declines to recommend that this case be remanded to the Commissioner merely to force duplication of these efforts. For this reason and those discussed above, the Court rejects this assertion of error.

### 2. Plaintiff's Subjective Complaints.

Plaintiff next asserts that the ALJ failed to adequately explain his conclusion that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 19.) In support of this finding, the ALJ cited Plaintiff's ongoing relationship with her now husband, her cohabitation with her stepson and mother, and her lack of consistent compliance with recommended treatment and medication. (AR 19.)

The ALJ's finding stems from Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017). This evaluation is based on seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency,

13

and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant uses; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id*. at *7-8 (citing 20 C.F.R. § 404.1529(c)(3)).

SSR 16-3p's predecessor, SSR 96-7p, called for a "credibility" determination based on the subject claimant's statements about the limiting effects of her alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). Although SSR 16-3p contains no reference to the term "credibility," there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations under SSR 96-7p has been abrogated. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"). A reviewing court therefore continues to accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations, *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011), which means that claimants seeking to overturn the ALJ's decision "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005).

The Court agrees with Plaintiff that the ability to maintain a marriage and share a living space with one's spouse, stepson, and mother do not represent compelling support for the ALJ's finding that Plaintiff's capacity to "get[] along with others" is not substantially impacted by her mental impairments. (AR 19.) Notably, the Commissioner's own regulations exclude familial relationships from an evaluation of claimant's social functioning in connection with a listed

impairment: "We will find that you have a 'marked' limitation in maintaining social functioning if you have a serious limitation in social interaction on a sustained basis … even if you are able to communicate with close friends or relatives." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 7.00, 14.00. The Court also notes that Plaintiff's social support system was frequently described as minimal or even nonexistent outside of her immediate family. (AR 498, 500.)

However, the ALJ appropriately highlighted Plaintiff's propensity for skipping scheduled therapy sessions, which ultimately led to the termination of case management services. (AR 472-75, 480, 486, 521, 527, 532-36, 540.) Plaintiff's failure to comply with such recommended treatment "suggest[s] that [her] conditions were not as severe as [she] made them out to be." *Blaim v. Comm'r of Soc. Sec.*, 595 F. App'x 496, 499 (6th Cir. 2014). *See also Peters v. Colvin*, No. 2:15-CV-217, 2016 WL 4965114, at *9 (E.D. Tenn. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 4921031 (E.D. Tenn. Sept. 14, 2016) ("Noncompliance with treatment is a legitimate credibility factor for an ALJ to consider."). The ALJ also noted Plaintiff's "fair ability to complete her activities of daily living," and the consistently "normal" findings documented with respect to her memory (AR 16, 18, 341, 361, 368, 376, 384, 389, 510), which stand in contrast to Plaintiff's testimony suggesting that poor memory prevents her from doing basic chores. (AR 40.) Such evidence provides substantial evidence in support of the ALJ's determination.

Plaintiff responds by emphasizing her involuntary hospitalization for multiple days and citing other "positive mental status findings" during the course of her treatment. (Docket No. 21-1 at 18.) Plaintiff must do more, however, than "simply point to countervailing evidence in the record" to prevail on appeal. *Long v. Berryhill*, No. 1:16-CV-485-CHS, 2018 WL 1162621, at *8 (E.D. Tenn. Mar. 5, 2018) (citing *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014)). She must demonstrate that the ALJ's determination is not

supported by substantial evidence. *See Bass*, 499 F.3d at 509 ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). Because the Court finds that the ALJ's finding was "reasonable and supported by substantial evidence," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007), and because Plaintiff has failed to demonstrate the necessity of reversing the ALJ's "essentially unchallengeable" findings in this regard, *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016), the Court rejects this assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 21) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

16